FENEL BAINE, Defendant Below, Appellant,
v.
STATE OF DELAWARE, Plaintiff Below, Appellee.
No. 670, 2006.
Supreme Court of Delaware.
Submitted: June 13, 2007.
Decided: August 21, 2007.
Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

ORDER
CAROLYN BERGER, Justice.
This 21st day of August 2007, on consideration of the briefs of the parties, it appears to the Court that:
1) Fenel Baine appeals from his convictions, following a jury trial, of manslaughter, two counts of possession of a firearm during the commission of a felony, assault second degree, assault third degree and related offenses. Baine argues that there was insufficient evidence to support his convictions and that the trial court imposed an excessive sentence because the court had a closed mind. We find no merit to these arguments and affirm.
2) Late at night, on December 15, 2005, Michael Cannon was shot and killed in a field between two apartment complexes in Seaford, Delaware. The events leading to Cannon's death began several weeks earlier, when Marcus Johnson "jumped" Baine's brother. According to Nadia Turpin (who had been Baine's girlfriend at one point, but was Johnson's girlfriend at the time of the shooting), Baine was upset about the fight and told Turpin that he was "going to get" Johnson.
3) On the night in question, Turpin, Johnson and Turpin's cousin, Rennerd Berry, were in an apartment in the Chandler Heights Apartments. At about 11:00 p.m., Devere Taylor, another of Turpin's cousins, arrived with Nakeisha Trammell, Baine, and Keenan Bacon. Baine immediately went to the back room in the apartment, where Johnson was lying down. Bacon followed. From the front of the apartment Berry heard smacking noises. Taylor ran into the back room and found Baine and Bacon hitting Johnson. As Taylor tried to pull the two men off Johnson, Taylor saw Baine kick Johnson in the head. After the attack, Johnson's head was bleeding.
4) Baine and Bacon then left the apartment. Before Turpin took Johnson to the hospital, Johnson called Cannon and his brother, Jeremy. When Johnson told them what had happened, they said they would be right over. Cannon and Jeremy were at the Seaford Meadows Apartments, a short walk across a field from the Chandler Heights Apartments.
5) As Cannon and Jeremy walked across the field, they saw Baine and Bacon coming toward them. When the four men were face to face, Baine asked whether Cannon and Jeremy had jumped Baine's brother. Jeremy said no, but Baine hit Jeremy in the head with a gun, knocking him to the ground. Baine then tried to put his gun in Jeremy's mouth, but Jeremy turned his head away and covered his face with his arms. A moment later, Jeremy heard a gunshot, but he was not hit. After Jeremy heard a second gunshot, he took his arms away from his face and saw his brother lying on the ground. Jeremy saw blood on Cannon's shirt, and thought Cannon had been shot. Jeremy stayed with his brother, hollering and crying, until the police arrived. Jeremy saw Baine and Bacon running toward the Seaford Meadows Apartments.
6) Bacon testified that he had a loaded gun with him, for protection, because he knew that he and Baine were looking to get the people who had attacked Baine's brother. Bacon did not pull his gun out, however, until he heard the first gunshot and got scared. Bacon shot Cannon and then walked toward the Seaford Meadows Apartments. From there, Bacon and Baine got a ride with Taylor back to the Pine Ridge Mobile Home Park, where Baine was staying. During that ride, Baine told Taylor that he had pistol whipped Johnson and Jeremy, and that Bacon shot Cannon. Baine also told Taylor to tell the police that Raymond Purnell was the person who committed the crimes.
7) The investigating officers searched the mobile home where Baine had been staying and found a box of Winchester nine millimeter Luger ammunition with several rounds missing. That ammunition had identical markings to a shell casing found at the scene of the shootings. The bullet recovered from Cannon's body was a .32 caliber bullet. The State did not perform any ballistics tests and did not test soil samples, DNA or clothing recovered from the crime scene.
8) In reviewing the sufficiency of the evidence, this Court will not overturn the jury verdict as long as "a rational trier of fact, considering the evidence in the light most favorable to the prosecution, could find the essential elements of the offense[s] beyond a reasonable doubt."[1] The record, as outlined above, is more than sufficient to satisfy this standard. Baine's only argument to the contrary is that the police failed to test the physical evidence, such as the bullets, and the witnesses' testimony was inconsistent. These arguable flaws in the State's case are not dispositive. A rational juror could have accepted the numerous witnesses' accounts of Baine's actions and statements as true, despite any inconsistencies; and there is no requirement that the State test bullets in order to prove that Baine had a gun and fired it. In sum, we are satisfied from our review of the record that there was sufficient evidence to support the guilty verdicts.
9) Baine also argues that the Superior Court exhibited a closed mind in sentencing him to 95 years at Level V, suspended after 93 years for two years of probation at Level IV. This Court undertakes very limited review of a sentence, such as this, that is within statutory limits:
Where the sentence falls within the statutory limits, we consider only whether it is based on factual predicates which are false, impermissible, or lack minimal reliability, judicial vindictiveness or bias, or a closed mind. "A judge sentences with a closed mind when the sentence is based on a preconceived bias without consideration of the nature of the offense or the character of the defendant."[2]
Baine contends that the trial court exhibited a closed mind when it stated, "[Y]ou will have to get your justice in the Delaware Supreme Court."
10) It is not at all clear that this statement, standing alone, would suggest any preconceived bias or closed mind. When considered in context, however, it is apparent that the comment does not support Baine's argument:
THE DEFENDANT: I didn't have no gun; the State don't have a gun. Don't you think the other guy would be shot?
THE COURT: Do you think that I believe that you didn't have a gun after I heard that testimony?
THE DEFENDANT: Your Honor, I'm not trying to, you know, get a smoother sentence, I'm just saying  because you know I ain't had a chance to talk since this been going on.
THE COURT: You can talk right now all you want. It is up to you whether you want to. You have the right of allocution; you can say anything you want to sentencing.
THE DEFENDANT: It's just crazy, Man. I've been totally denied of justice. But I know I'm going to get my justice.
THE COURT: Well, you will have to get your justice at the Delaware Supreme Court. From my point of view, you had justice.[3]
The trial court then reviewed Baine's criminal history; the fact that he was on probation when he committed these crimes; the vulnerability of the victims; and Baine's undue depreciation of the offenses. The court concluded that Baine was living a life of violence and would return to his violent ways when given the chance. We find nothing in the trial court's analysis, to suggest that the court acted with a closed mind. Accordingly, we will not review the length of the sentence imposed.
NOW, THEREFORE, IT IS ORDERED that the judgments of the Superior Court be, and the same hereby are, AFFIRMED.
NOTES
[1] Poon v. State, 880 A.2d 236, 238 (Del. 2005).
[2] Kurzmann v. State, 903 A.2d 702, 714 (Del. 2006) (Citations omitted.)
[3] Appellant's Appendix, A-127-28.