IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOSHUA SHORTS, | § | |
| | § | No. 268, 2017 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID. No. 1603008492 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: May 16, 2018
Decided: May 30, 2018

Before **STRINE**, Chief Justice; **VALIHURA**, and **SEITZ**, Justices.

## **ORDER**

This 30th day of May, 2018, having considered the briefs and the record below, it appears to the Court that:

(1)    Police arrested Joshua Shorts and Michael Diehl after witnessing a drug transaction in a vehicle outside Red Robin. Their cell phones contained text messages revealing that Shorts planned to sell heroin to Diehl, who would in turn sell it to another buyer. Diehl confessed to buying the heroin from Shorts to sell. Shorts was charged with possession with intent to deliver four grams or more of heroin, possession of five grams or more of heroin, second degree conspiracy, and possession of codeine. On November 29, 2016, he pled guilty to possession with

intent to deliver four grams or more of heroin and second degree conspiracy. The truth-in-sentencing plea form stated that the sentencing range for the drug offense was two to twenty-five years.[1]  However, Shorts qualified as an habitual offender, and thus the actual maximum was a discretionary life sentence.

(2)     At the plea colloquy, the trial judge confirmed that Shorts reviewed the plea agreement and the truth-in-sentencing plea form with his attorney and went over any questions, issues, or concerns.  Shorts stated that he understood what rights he was waiving and that no one "forced or threatened" him to plead guilty or promised him what his sentence would be.  The court found there was a factual basis for the plea and accepted it as knowing, intelligent, and voluntary.[2]  At the colloquy, however, the court did not state on the record the mandatory minimum penalty provided by law and the maximum possible penalty provided by law.[3]

(3)     On January 25, 2017, before sentencing, the State filed a motion to declare Shorts an habitual offender.  Shorts then moved to withdraw his guilty plea.[4] In his motion, Shorts argued that there was a procedural defect in the plea because the maximum sentence on the form was incorrect, and that his attorney pressured

---

[1] App. to Opening Br. at 28 (Truth-in-Sentencing Guilty Plea Form, *State v. Shorts*, No. 1603008492 (Del. Super. Nov. 29, 2016)).
[2] *Id.* at 21–24 (Tr. Plea Colloquy, *Shorts*, No. 1603008492, at 5–8 (Del. Super. Nov. 29, 2016)).
[3] *See* Super. Ct. Crim. R. 11(c)(1).
[4] Shorts filed his motion *pro se* before being appointed counsel.  On February 13, 2017, his counsel refiled the motion; afterwards, his counsel changed, and on March 23, 2017, his new counsel filed a new motion to withdraw the guilty plea.

2

him into taking the plea.[5] The State withdrew its habitual offender petition on June 23, 2017 because Shorts "was not fully aware of the life sentence," and the form did "not specifically list the correct amount of years."[6] Shorts argued that withdrawing the petition did not cure the procedural defect because "advising somebody of the wrong penalties at the time of . . . the plea, not at the time of sentencing, is what we look at"—and the sentences at the time of the plea were incorrect.[7] The court disagreed and held that the State's withdrawal of its petition cured the procedural defect,[8] and that his plea was knowing and voluntary because Shorts stated at the colloquy that no one forced him to take it.[9] The Superior Court denied Shorts' motion to withdraw and sentenced him to twenty-seven years suspended after thirty months, followed by decreasing levels of supervision. Shorts appealed.

(4) On appeal, Shorts argues that the Superior Court abused its discretion in denying his motion to withdraw his guilty plea. First, he asserts that there was a "formal defect in taking the plea" because he was told the maximum sentence was twenty-five years, when it was actually a discretionary life sentence.[10] Second,

---

[5] App. to Opening Br. at 35 (Mot. to Withdraw Guilty Plea, *Shorts*, No. 1603008492 (Del. Super. Mar. 22, 2017)).

[6] *Id.* at 99–100 (Tr. Mot. to Withdraw Guilty Plea, *Shorts*, No. 1603008492, at 46–47 (Del. Super. June 23, 2017)).

[7] *Id.* at 70 (Tr. Mot. to Withdraw Guilty Plea, at 17).

[8] *Id.* at 108 (Tr. Mot. to Withdraw Guilty Plea, at 55).

[9] *Id.* at 109–10 (Tr. Mot. to Withdraw Guilty Plea, at 56–57).

[10] Opening Br. at 5.

Shorts argues his plea was not knowing and voluntary because he was "unduly pressured to plead guilty" by his counsel.[11] This Court reviews the denial of a motion to withdraw a guilty plea for an abuse of discretion.[12]

(5)     A court may permit withdrawal of a guilty plea "upon a showing by the defendant of any fair and just reason."[13]   To determine if the defendant has established a fair and just reason, courts consider whether: (1) there was a procedural defect in taking the plea; (2) the defendant knowingly and voluntarily consented to the plea agreement; (3) the defendant has a basis to assert legal innocence; (4) the defendant had adequate legal counsel throughout the proceedings; and (5) granting the motion prejudices the State or unduly inconveniences the court.[14]  "These factors are not factors to be balanced; indeed, some of the factors of themselves may justify relief."[15]  When a motion to withdraw a guilty plea is made prior to sentencing, there is "a lower threshold of cause sufficient to permit withdrawal."[16]

(6)     Shorts argues for the first time on appeal that the court abused its discretion because it did not address him "personally in open court" to inform him

---

[11] *Id.*

[12] *Blackwell v. State*, 736 A.2d 971, 972 (Del. 1999); *see id.* ("A motion to withdraw a guilty plea is addressed to the sound discretion of the trial court.").

[13] Super. Ct. Crim. R. 32.

[14] *Scarborough v. State*, 938 A.2d 644, 649 (Del. 2007).

[15] *Id*.  As to the final three factors, the court found that Shorts' counsel was not ineffective, that Shorts did not have a legal basis for innocence, and noted that granting the motion would cause little prejudice to the State.

[16] *McNeill v. State*, 810 A.2d 350, 2002 WL 31477132, at *1 (Del. Nov. 4, 2002) (TABLE).

and determine that he understood "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law," as prescribed by Superior Court Criminal Rule 11(c).[17] The State concedes that the court did not state the sentencing range on the record, but argues that "the court's failure to do so is not fatal."[18] Under Rule 11, the court must confirm that the defendant understands the consequences of his guilty plea and must state the minimum and maximum sentences on the record.[19] This is in part because "[t]he maximum possible sentence is the most important consequence of a guilty plea."[20] However, "not all technical defects in accepting a guilty plea justify withdrawal of the plea after sentencing."[21] When a "plea colloquy [does] not conform to the technical requirements" of Rule 11, "the Superior Court may permit a defendant to withdraw his guilty plea after sentencing only to correct manifest injustice."[22]

---

[17] Super. Ct. Crim. R. 11(c). Because Shorts raises this argument for the first time appeal, we review for plain error. *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) ("Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process.").

[18] Answering Br. at 7.

[19] Super. Ct. Crim. R. 11(c).

[20] *Allen v. State*, 509 A.2d 87, 88–89 (Del. 1986) (citing *Wells v. State*, 396 A.2d 161, 162 (Del. 1978)).

[21] *Id.* at 89.

[22] *Id.* at 88; *see also State v. Webster*, 1992 WL 91142, at *3 (Del. Super. Apr. 30, 1992), *aff'd*, 628 A.2d 85 (Del. 1993) ("The pertinent inquiry at this point with regard to those deficiencies is whether Movant has shown prejudice rising to the level of manifest injustice.").

(7)    In *State v. Webster*, the defendant moved to withdraw his guilty plea when the trial court failed to state the maximum possible sentences on the record.[23] The Superior Court explained that the defendant must show that the court's omission "influenced his decision to plead guilty" to establish manifest injustice and have his plea withdrawn.[24]  The court found there was no manifest injustice because the sentences were accurately stated on the plea form the defendant reviewed and signed.  Thus, the defendant was aware of the maximum sentences, and he could not show that the court's omission influenced his decision to plead guilty.  Similarly, in the instant case, the trial court did not state the maximum penalties on the record, but the sentences were stated on the guilty plea form that Shorts signed.  Thus, the court's error in not stating the maximum penalty did not influence Shorts' decision to plead guilty, and Shorts cannot establish manifest injustice.[25]

(8)    Shorts argues that he suffered manifest injustice because the plea form stated that the maximum penalty for the drug offense was twenty-five years, when

---

[23] *Webster*, 1992 WL 91142.

[24] *Id.* at *4; *see also Allen*, 509 A.2d at 88 (denying motion to withdraw guilty plea even though the court stated the maximum sentence was thirty years when it was actually fifteen); *cf. Wells*, 396 A.2d at 162 (granting defendants' motions to withdraw their guilty pleas when the trial judge entirely failed to inform them of the possible maximum sentences).

[25] Shorts also argues that had the court stated the maximum sentence at the guilty plea hearing, the error would have been caught and remedied, and he would have revoked his plea.  Reply Br. at 2–3.  We find this argument unavailing.  The State had not yet moved to declare Shorts an habitual offender, and thus the court had no reason to find the plea form incorrect.  And as explained, any error on the part of the State in failing to identify and remedy the sentencing range was cured by its withdrawal of the petition to declare Shorts an habitual offender.

he could have faced a life sentence. The Superior Court found that while the inaccuracy was a procedural defect, it was cured by the State's withdrawal of its petition to declare Shorts an habitual offender.[26] The State explained that in the end, the sentencing range was "two to twenty-seven years, exactly as it [was] set forth" on the plea form. We agree. Shorts repeats in his briefing that the State's withdrawal did not cure the defect, but he fails to state why.[27] Shorts pled guilty when he believed he was facing a maximum penalty of twenty-five years for the drug offense—and this is the maximum he was ultimately sentenced under. The State's motion to declare him an habitual offender and its subsequent withdrawal did not change the sentence under which he pled.

(9) In *Smith v. State*, the defendant's plea form stated that the maximum sentence was twenty years, when it was actually twenty-five.[28] The court sentenced the defendant to twenty-five years. On remand, however, the court resentenced the defendant to twenty years to match the maximum on the guilty plea form. This Court held that resentencing the defendant to comport with the plea form "corrected any alleged error."[29] Similarly, while the maximum sentence on Shorts' plea form stated twenty-five years when the actual maximum was a life sentence, the State's

---

[26] App. to Opening Br. at 110 (Tr. Mot. to Withdraw Guilty Plea, at 57).
[27] Opening Br. at 6–7.
[28] 89 A.3d 478, 2014 WL 1017277, at *3 (Del. Mar. 13, 2014) (TABLE).
[29] *Id.*

7

withdrawal of its petition changed the maximum sentence to match the plea form, thus correcting any error.

(10) Shorts' second argument is that his plea was not knowing and voluntary because his counsel pressured him into taking the plea by telling him "that he would be sentenced to twenty-five years imprisonment if he did not plead guilty pursuant to the plea agreement."[30] The Superior Court found that this argument boiled down to a question of credibility: whether Shorts was telling the truth at the colloquy— where he stated that no one forced him to take the plea and that he was satisfied with his representation—or at the motion to withdraw hearing—where he stated that his counsel pressured him to take the plea.[31] The court concluded that Short's testimony at the motion to withdraw hearing was not credible and that his testimony at the plea colloquy established that the plea was knowing and voluntary.[32] The court explained, "He came into the courtroom and talked to me directly about wanting to plead guilty, and he said, Yes, I want to plead guilty to this charge."[33]

(11) On appeal, Shorts argues that the court abused its discretion by concluding that his testimony was not credible because it failed to look at "the actual context in which the plea was taken."[34] He explains that "the plea was obviously

---

[30] Opening Br. at 5.
[31] App. to Opening Br. at 105–06 (Tr. Mot. to Withdraw Guilty Plea, at 52–53).
[32] *Id.* at 108–09 (Tr. Mot. to Withdraw Guilty Plea, at 55–57).
[33] *Id.* at 106 (Tr. Mot. to Withdraw Guilty Plea, at 53).
[34] Opening Br. at 7.

8

represented to [him] as very advantageous;" however, he was not informed that the State could only have convicted him of one of the drug offenses because the two charges were based on the same batch of heroin.[35] Thus, he argues, his "advantage as a consequence of pleading guilty was largely illusory," which shows his plea was not knowing and voluntary.[36] In addition, he explains, the court did not confirm on the record that Shorts understood the "nature of the charge[s]" he was facing.[37]

(12) A plea is knowing and voluntary when it is "voluntarily offered by the defendant, himself, with a complete understanding by him of the nature of the charge and the consequences of his plea, and that the trial judge has so determined."[38] To be voluntary, the court must ensure that the plea "did not result from force, threats, or promises."[39] A defendant "is bound by the answers he provide[s] on his [truth-in-sentencing] guilty plea form,"[40] and his "statements to the Superior Court during the guilty plea colloquy are presumed to be truthful."[41] When reviewing the

---

[35] *Id.* at 7–8 (citing *Brown v. State*, 89 A.3d 476, 2014 WL 1258298, at *4 (Del. Mar. 25, 2014) (TABLE)).

[36] *Id.* at 7. Shorts also argues that he could not have been convicted of conspiracy because under *Wharton*'s rule, a party cannot be convicted of conspiracy if the person he is alleged to have conspired with "is necessarily involved with the person in the commission of the offense." 11 *Del. C.* § 521. However, Shorts pled guilty to second degree conspiracy with the intent to sell heroin, and "Wharton's Rule does not apply to an offense involving possession with intent to deliver." *Johnson v. State*, 587 A.2d 444, 453 (Del. 1991).

[37] Super. Ct. Crim. R. 11(c)(1).

[38] *Brown v. State*, 250 A.2d 503, 504 (Del. 1969); *see also Wells*, 396 A.2d at 163.

[39] Super. Ct. Crim. R. 11.

[40] *Dickson v. State*, 991 A.2d 17, 2010 WL 537731, at *2 (Del. Feb. 16, 2010) (TABLE).

[41] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).

testimony of the defendant or witnesses, "the trier of fact is the sole judge of credibility," and we will not disturb its factual findings when "supported by competent evidence."[42]

(13) In *Teel v. State*, the defendant argued that he should have been allowed to withdraw his guilty plea because he was coerced into pleading guilty, unable to read, under the influence of drugs, and confused about the minimum and maximum sentences.[43] This Court rejected the defendant's claim, because at his colloquy, the defendant stated that he was not under the influence of drugs, was not threatened or promised anything to induce him to plead guilty, and understood the minimum and maximum sentences.[44] The court concluded that "the plea colloquy clearly reflects that [the defendant's] plea was voluntary," and thus there were no grounds to support its withdrawal.[45] Similarly, Shorts now claims he was coerced into taking the plea and did not understand the nature of the charges. However, Shorts testified at the colloquy that he went over the plea agreement, that no one forced him to plead guilty, and that he was satisfied with his counsel's response to any questions, issues, and concerns:

> Q. Did you have an opportunity to go over the plea agreement with [counsel]?
> A. Yes.

---

[42] *Moore v. State*, 540 A.2d 1088, 1988 WL 35155, at *3 (Del. Apr. 18, 1988) (TABLE).
[43] 959 A.2d 28, 2008 WL 4483731, at *2 (Del. Oct. 7, 2008) (TABLE).
[44] *Id.* at *1.
[45] *Id.*

Q. If you had any questions, issues, or concerns as you went over this plea agreement with [counsel], was he able to respond to them to your satisfaction?

A. Yes.

. . .

Q. Has anybody forced or threatened you to plead guilty today?

A. No.

Q. Has anybody promised you what the sentence will be?

A. No.[46]

Similar to *Teel*, Shorts' colloquy reflects that his plea was voluntary. He cannot point to anything in the transcript to rebut the presumption that his statements were truthful, and "[a]bsent clear and convincing evidence to the contrary, [the defendant] is bound by his sworn answers in open court."[47]

(14) In another similar case, *Brown v. State*, the defendant moved to withdraw his guilty plea, arguing that he did not understand the nature of the charges against him.[48] The court rejected this argument, finding that the defendant conferred with his counsel for thirty minutes prior to accepting the plea, and the judge confirmed on the record that the defendant discussed the matter fully with his counsel. Thus, the court determined it was "quite apparent that [the defendant] knew

---

[46] App. to Opening Br. at 21–22 (Tr. Plea Colloquy, at 5–6).

[47] *Benson v. State*, 933 A.2d 1249, 2007 WL 2523180, at *2 (Del. 2007) (TABLE); *see id.* (rejecting the defendant's motion to withdraw guilty plea because "the transcript of the guilty plea colloquy clearly reflects [the defendant's] understanding that . . . no one had promised what sentence he would receive").

[48] 250 A.2d at 504.

11

what he was doing."[49]  Like the defendant in *Brown*, Shorts argues that his counsel failed to adequately inform him about the nature of his charges, and that the court failed to confirm that he understood them.  However, just as in *Brown*, the trial court confirmed that Shorts went over the agreement with his counsel and that any issues, questions, and concerns were satisfactorily addressed.  Therefore, Shorts "knew what he was doing," and the court did not abuse its discretion in finding that his plea was knowing and voluntary.  The Superior Court did not abuse its discretion in denying Shorts' motion to withdraw his guilty plea.

NOW, THEREFORE, it is hereby ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

[49] *Id.*