IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SUZANNE WILGUS, | : | |
| | : | |
| Plaintiff, | : | K17C-07-032 JJC |
| | : | In and for Kent County |
| v. | : | |
| | : | |
| BAYHEALTH MEDICAL CENTER, | : | |
| INC., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION & ORDER

Submitted: July 13, 2018
Decided:  July 23, 2018

Daniel C. Herr, Esquire, Law Office of Daniel C. Herr, LLC, Wilmington, Delaware, *Attorney for the Plaintiff*

Samuel L. Moultrie, Esquire, Greenberg Traurig, LLP, Wilmington, Delaware, & Johnine P. Barnes, Esquire, Greenberg Traurig, LLP, Washington, DC, *Attorneys for the Defendant*.

**Clark, J.**

Plaintiff Suzanne Wilgus (hereinafter "Ms. Wilgus") sues Defendant Bayhealth Medical Center, Inc. (hereinafter "Bayhealth") for alleged violations of Delaware's Persons With Disabilities Employment Protections Act[1] (hereinafter "DEPA"). Ms. Wilgus, a Bayhealth employee for twenty-seven years, suffered a 2016 back injury that required surgery. At the end of her disability period, she sought to return to work when released to full duty. Bayhealth terminated her because she told Bayhealth she would require a back-brace for her first several weeks after returning to work. She claims that Bayhealth refused to make a reasonable accommodation for her disability and also failed to engage in an interactive process with her. Bayhealth asserts that it appropriately terminated her because it has a leave of absence policy that prohibits the use of assistive devices in the work place that are "not covered by law."

Bayhealth moves for summary judgment arguing that Ms. Wilgus did not qualify as a "person with a disability," and therefore does not qualify for DEPA protection. Ms. Wilgus concedes the appropriateness of summary judgment regarding some of her claims. The only issue remaining is whether Ms. Wilgus had "a record of" an impairment when she returned to work because her doctor had provided Bayhealth a note than she was able to return to full duty. For the reasons that follow, summary judgment is appropriately **DENIED** as to that claim. Without opposition, summary judgment regarding other aspects of Ms. Wilgus's claims is **GRANTED**.

## I.    Facts of Record

The following facts are those of record viewed in the light most favorable to Ms. Wilgus. Ms. Wilgus was employed by Bayhealth for approximately twenty-

---

[1] 19 *Del. C.* § 720 *et seq.*

seven years in various capacities, including as a registered nurse in the neonatal intensive care unit. Ms. Wilgus began experiencing pain due to a herniated disc in July 2016 and began Family Medical Leave (hereinafter "FMLA") on July 12, 2016. After her FMLA period expired, Bayhealth approved her for an additional leave of absence through January 6, 2017. Ms. Wilgus testified that during those six months she suffered impaired mobility and pain that affected her ability to work, sit, stand and sleep. She also testified that she required the help of third-parties to do house work and care for her children.

While on leave, Ms. Wilgus obtained medical treatment from Dr. Boulos for her back. Dr. Boulos performed an anterior lumbar interbody fusion on Ms. Wilgus on November 15, 2016. Dr. Boulos also restricted her from working due to limited mobility and pain. The record includes October 13, 2016 and November 3, 2016 "Disability Determination" notes from Dr. Boulos providing that Ms. Wilgus was on "total temporary disability" for approximately three months before her return to work date

On January 5, 2017, Ms. Wilgus had a follow-up appointment with Dr. Boulos. At that point, he cleared her to return to work with no restrictions. She in turn provided his return to work note to Bayhealth. Dr. Boulos also gave Ms. Wilgus oral instructions to wear a back-brace while at work for at least two weeks because the job required 12-hour shifts with frequent standing.

Ms. Wilgus next went to a "fit for duty" exam at Bayhealth on January 5, 2017. There, she indicated that she would require the use of a back-brace for "a couple of weeks." The Bayhealth employee told her, however, that she could not return to work with a back-brace. At that time, Ms. Wilgus provided Bayhealth no documentation from her doctor other than the return to work note that indicated she had no restrictions.

The next day, January 6, 2017, Ms. Wilgus called Bayhealth Human Resources employee Lisa Lorea (hereinafter "Ms. Lorea"). Ms. Wilgus told Ms. Lorea that she had no restrictions and could still perform her job duties. Ms. Wilgus testified that she inquired more about the policy that prohibited back-braces and she asked if any accommodations could be made since she would only need to wear the brace for a short time. The email to Ms. Lorea on January 6, 2017 included the following request:

> [p]lease give reasonable consideration to a slight exception in this case. I will be happy to provide you with any information you request, including a statement from my surgeon.

Ms. Wilgus testified that Bayhealth denied her the option to seek an amendment to her return to work documentation from Dr. Boulos. Furthermore, she testified that Bayhealth personnel did not ask her whether Dr. Boulos would clarify his oral instruction regarding the need for a back-brace.

On January 10, 2017, Ms. Wilgus next met with Ms. Lorea and Bayhealth employee Ruby Bower. Ms. Wilgus testified that she explained at the meeting that she would only need the back-brace for a few more weeks. They told her that nothing could be done because the brace was considered an assistive device that Bayhealth could not accommodate pursuant to their policy. For summary judgment purposes, the evidence of record establishes that Bayhealth took no action to investigate whether it could provide her a reasonable accommodation. Nor did it engage in an interactive process with Ms. Wilgus regarding that issue. Bayhealth then terminated Ms. Wilgus.

## II. Standard

Summary judgment is appropriate when the pleadings, discovery, disclosure materials on file, and supporting affidavits show that there is no genuine issue as to

4

any material fact and that the movant is entitled to judgment as a matter of law.[2] The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor.[3] Only when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, is there no genuine issue of material fact.[4]

## III.    Analysis

Ms. Wilgus and Bayhealth stipulated in their briefing that disability claims under DEPA are evaluated using the same legal standards and framework used by federal courts in applying the Americans With Disabilities Act (hereinafter the "ADA").[5] This is consistent with the General Assembly's direction in DEPA to use comparable federal law when interpreting that Act.[6]

This summary judgment motion turns solely on whether there is a genuine issue of material fact regarding Ms. Wilgus's status as a "person with a disability." DEPA defines a "person with a disability" to include a person who:

> a. Has a physical or mental impairment which substantially limits one
> or more major life activities;
> b. Has a record of such impairment; or
> c. Is regarded as having such an impairment.[7]

---

[2] Super. Ct. Civ. R. 56(c); *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)

[3] *Brozaka v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

[4] *Lum v. Anderson*, 2004 WL 772074, at *2 (Del. Super. Mar. 10, 2004).

[5] *See Testerman v. Chrysler*, 1999 WL 820934, at *11 (For the purposes of evaluating state law claims of disability discrimination under 19 *Del. C.* § 720, courts have utilized the same legal standards and framework established by the federal courts for actions under the ADA).

[6] See *19 Del. C.* § 721(b) (providing "in defining the scope or extent of any duty imposed by this subchapter; including the duty of reasonable accommodation, higher or more comprehensive obligations established by otherwise applicable federal . . . enactments may be considered.").

[7] 19 *Del. C.* § 722(4).

In opposing the motion, Ms. Wilgus focuses solely on the second prong of the definition; she alleges that she has "a record of such impairment."[8] She argues that the evidentiary record contains significant evidence that as of January 6, 2017, she had a "record of" a physical impairment that substantially limited one or more major life activities. In addition to her testimony regarding the injuries effect on her during a six month period, she relies on two statements of "total temporary disability" provided to Bayhealth by her back surgeon. Ms. Wilgus argues that this evidence of record establishes for purposes of summary judgment that she *had* a substantially limiting impairment and that there was a clear record of it.

In contrast, Bayhealth argues that that Ms. Wilgus did not have a record of such impairment as of January 6, 2017 because she was cleared to return to work without restrictions. At that point, because her doctor's note provided her a clean bill of health with no further restrictions, Bayhealth argues that Ms. Wilgus no longer had a record of such impairment. Namely, Bayhealth argues that in order to qualify as having a record of such impairment, there must also be some present, ongoing impairment or lingering condition.

Accordingly, the parties arguments are distilled to the narrow issue of whether or not a "record of impairment" requires evidence of some ongoing impairment at the time of the allegedly adverse action in order to trigger obligations under DEPA. It does not. The Court finds that to accept Bayhealth's argument would require

---

[8] Bayhealth also argues that summary judgment is appropriate because (1) Ms. Wilgus no longer had a physical impairment that substantially limited major life activities as of January 6, 2017, (2) Bayhealth did not regard Ms. Wilgus as disabled and (3) Bayhealth articulated a legitimate, non-discriminatory reason for Ms. Wilgus's termination irrespective of her alleged disability. Ms. Wilgus concedes that there are no genuine issues of fact regarding both the active impairment and "regarded as" issue. With respect to Bayhealth's alleged legitimate, non-discriminatory reason for terminating her, Bayhealth cites no support for that premise, either in law or fact. Nor did Bayhealth address that issue at oral argument. Under those circumstances, summary judgment on that ground is not appropriate.

conflating the first and second prongs of the definition at issue. They constitute separate and distinct prongs, and the statute's language referring to "a record of such impairment" does not require ongoing impairment to qualify.

First, the Court finds persuasive the Equal Employment Opportunity Commission's regulations promulgated to implement the ADA. There the EEOC clearly sides with Ms. Wilgus's position. Namely, in the context of seeking a reasonable accommodation, EEOC regulations provide:

> [a]n individual with a record of a substantially limiting impairment may be entitled . . . to a reasonable accommodation if needed and related to the **past disability**. For example, an employee with an impairment **that previously limited**, **but no longer substantially limits**, a major life activity may need leave or a schedule change to permit him or her to attend follow-up or "monitoring" appointments with a health care provider.[9]

Such language evidences at least the EEOC's clear intent that the Federal ADA does not require an ongoing disability when a person's claim is brought because of "a record of such impairment." While the EEOC adopted this regulation after enactment of DEPA, the General Assembly provided when enacting DEPA that it "shall be liberally construed to promote the full employment opportunity of qualified persons with . . . disabilities who seek such opportunity in good faith."[10] Furthermore, DEPA specifically provides for the interpretation of DEPA's reasonable accommodation requirements by using federal law, when such laws create "higher or more comprehensive obligations."[11]

The Court also finds persuasive the reasoning of the Eastern District of Pennsylvania regarding the same issue. Namely, that Court held that prohibiting discrimination against an individual with a record of disability is intended to protect

---

[9] 29 C.F.R § 1630.2 (k)(3) (emphasis added).
[10] 19 *Del. C.* § 722(b).
[11] *Id.*

individuals with a history of disability, regardless of whether they *are currently* substantially limited in a major life activity.[12]  According to that Court, to establish a record of disability, an individual must show that at the time he or she experienced an impairment,  the impairment substantially limited a major life activity.[13]  There is no ongoing requirement.[14]  The "record of " prong  is designed to protect, from discrimination based on their medical history, those who have recovered *or* are recovering from substantially limiting impairments.[15]

Notably, lay testimony can be sufficient to demonstrate the degree of an individual's  impairment.[16]  Nevertheless, here, Ms. Wilgus's surgeon's "total temporary disability" notes, covering the period between October 13, 2016 and January 5, 2017 singularly generate a genuine issue of material fact regarding whether she had a record of such an impairment.  In addition, her lay testimony regarding her restrictions throughout the six month period, and Bayhealth's acceptance of her temporary disability leave, provide further evidence of record that precludes summary judgment.

At oral argument, Bayhealth cited three cases it argues supports the necessity for an ongoing impairment.  Namely, Bayhealth cites *Nichols v. OhioHealth Corp.*[17], *Gleason v. Food City 654*[18], and *Jennings v. Dow Corning Corp*[19].  All three cases

---

[12] *Eshelman v. Agere Sys.*, 2004 WL 2922074, at *4 (E.D. PA Dec. 16, 2004).

[13] *Id.*

[14] *Id.*

[15] LABOR AND EMPLOYMENT LAW: COMPLIANCE AND LITIGATION § 4:110.50 (3d ed. 2018).

[16] *See Bennett v. State*, 933 A.2d 1249, 2007 WL 2286055 (Del.2007) (TABLE) (holding that expert testimony to establish that an individual met the statutory definition of an infirm adult was unnecessary where there was testimony from lay witnesses that the victim was diabetic, had balance problems, was completely incontinent).

[17] 2017 WL 3537184 (S. D. Oh. 2017).

[18] 2015 WL 1815686 (E. D. Tenn. 2015).

[19] 2013 WL 1962333 (E. D. Mich. 2013).

examine claims under the separate "regarded as" prong.[20] The plain language included in that portion of the definition includes a present requirement for such a regard. Furthermore, those cases are distinguishable because the "regarded as" prong, at least in the ADA, does not trigger the right to a reasonable accommodation. Namely, EEOC regulations provide:

> [a] covered entity is required . . . to provide a reasonable accommodation to an otherwise qualified individual who meets the definition of disability under the "actual disability prong . . ., or "record of" prong . . ., but is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the "regarded as" prong . . .[21]

During oral argument, Bayhealth also cited *Tice v. Centre Area Transp. Authority*,[22] asserting that it holds that an individual with a "record of disability" must demonstrate that he or she remains currently impaired at the time of discrimination. Specifically, Bayhealth points to the following language:

> [a] plaintiff attempting to prove the existence of a "record" of disability still must demonstrate that the recorded impairment is a "disability" within the meaning of the ADA. Tice has only presented evidence that his impairment limited his ability to drive a bus-once again, because an impairment that limits only bus driving is not a "disability," Tice has not demonstrated the existence of a record of disability.[23]

Ms. Wilgus counters that the correct interpretation of this language is that the recorded impairment must have qualified as a disability during the period it was recorded, not that the individual demonstrate that he or she was presently impaired. The Court agrees. A plain reading of the Third Circuit's holding in *Tice* does not require such a plaintiff to show he or she was presently disabled, but only that the

---

[20] *Nichols*, 2017 WL 3537184, at *7; *Gleason*, 2015 WL 1815686, at *5; *Jennings*, 2013 WL 1962333, at *8.
[21] 29 C.F.R. § 1630.0(e).
[22] 247 F.3d 506 (3d Cir. 2001).
[23] *Id*. at 513.

recorded impairment qualif*ied* as a disability under the ADA. Bayhealth's interpretation does not logically follow because it would conflate the "record of" prong with the first prong.

Moreover, the plain language of the statute, provides that the person "**[h]as a physical** or mental **impairment**", "**[h]as a record of** such impairment", or **"[i]s regarded as** having such impairment."[24]  The first and the third prongs clearly require either current manifestations of the disability or current subjective interpretations by the employer that the employee has a current disability.  The second prong has no such contemporaneous requirement.  A "record" necessarily records a past event.  Accordingly, with regard to the "record of" prong, there is a genuine issue of material fact regarding whether Ms. Wilson was a person with a disability at the time Bayhealth allegedly failed to provide her a reasonable accommodation.

Independent of the one contested matter, the Court is otherwise satisfied that the evidence, when viewed in the light most favorable to Ms. Wilgus, generates triable issues of fact regarding all other aspects of Ms. Wilgus's failure to provide a reasonable accommodation claim.  Namely, genuine issues of material fact exist on this record as to (1) Ms. Wilgus's request for an accommodation, (2) if Bayhealth investigated whether it could provide a reasonable accommodation, and (3) whether Bayhealth ultimately made a reasonable accommodation for her.[25]  Consequently, considering the evidence of record that Ms. Wilgus's back-brace would not be disruptive and would only be required for a few weeks, a genuine issue of material fact exists as to whether Bayhealth failed to investigate reasonable accommodations for Ms. Wilgus and also whether Ms. Wilgus's permissible use of a back-brace,

---

[24] 19 *Del. C.* § 722(4) (emphasis added).
[25] *See 19 Del. C.* § 723(b) (providing the reasonable accommodation duties of an employer after request by an employee).

10

while being able to fulfill all of her job duties, would have been a reasonable accommodation.

## IV.    Conclusion

Without opposition by Ms. Wilgus, Bayhealth's motion for summary judgment regarding the triggering of her DEPA reasonable accommodation claim because of her alleged (1) current substantial impairment, and (2) her being regarded as having such impairment is **GRANTED.**    For the reasons set forth above, Bayhealth's motion for summary judgment is **DENIED** regarding Ms. Wilgus's claim that Bayhealth denied her a reasonable accommodations based on her record of a qualifying impairment.  The start of trial shall remain as scheduled on August 27, 2018.

**IT IS SO ORDERED**


/s/Jeffrey J Clark
Judge